DEERE & COMPANY *et al.*, Plaintiffs-Appellants, *v.* ROBERT H. ALLPHIN, Director of Revenue of the State of Illinois, *et al.*, Defendants-Appellees.

Third District   No. 76-534

Opinion filed June 14, 1977.

William P. Sutter, of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, and Lindholm & Williamson, of Peoria, for appellants.

William J. Scott, Attorney General, of Chicago (Patricia Rosen and George H. Klumpner, Assistant Attorneys General, of counsel), for appellees.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Plaintiffs, Deere and Company and Edward Hine Company, brought this declaratory judgment action against the Director of Revenue, the State Treasurer, and the Attorney General to determine plaintiffs' liability for service use taxes and municipal service occupation taxes with respect to certain advertising brochures. Deere purchased brochures and other printed material from Hine, a commercial printer located in Peoria, Illinois. Hine, at the request of Deere, delivered the material to Deere's agent, Desaulniers and Company, in Moline where the printed materials were placed in envelopes, addressed, sorted and mailed to dealers and customers of Deere residing both within and without the State of Illinois. Hine collected the service use tax and the municipal service occupation tax from Deere, and paid that portion of the taxes attributable to out-of-State mailings to the Department of Revenue under protest. Deere and Hine then filed this action to recover the amounts paid under protest.

The case was submitted to the trial court on motions for summary judgment filed by both plaintiffs and defendants, and judgment was entered for defendants, thereby imposing tax liability on plaintiffs. On appeal, plaintiffs contend, first that the printed materials are not subject to either the use tax or the service occupation tax, and, second, if the tax statutes are construed to impose these taxes, then the taxes are an

unconstitutional burden on interstate commerce. We find neither contention persuasive.

The Service Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.33) provides:

> "A tax is imposed upon the privilege of using in this State real or tangible personal property acquired as an incident to the purchase of a service from a serviceman."

■■ There is no question but that printed materials are tangible personal property acquired as an incident to the purchase of a service from a serviceman within the meaning of the statute.

In section 2 (par. 439.32) of the Act, "use" is defined as "the exercise by any person of any right or power over tangible personal property incident to the ownership of that property * * *."

■■ The Service Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.31 *et seq.*) and the Service Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.101) are intended to supplement the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 440) and to prevent tax avoidance by business primarily engaged in furnishing services at retail. Section 3 of the Service Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439103) provides:

> "However, such tax is not imposed upon the privilege of engaging in any business in interstate commerce or otherwise, which business may not, under the Constitution and statutes of the United States, be made the subject of taxation by this State."

Plaintiffs attempt to present two separate issues: first, whether Deere used the printed matter in Illinois so as to subject it to a use tax, and, second, whether imposition of a use tax would violate the prohibition of the commerce clause in the United States Constitution (U.S. Const., art. I, §9). However, we view one question as determinative: Did Deere exercise in Illinois any right of ownership over the printed materials, which would amount to a use taxable by the State, before the materials entered the stream of interstate commerce?

The commerce clause of the United States Constitution was explained in *Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 177-78, 83 L. Ed. 586, 593, 59 S. Ct. 389, as follows:

> "The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a tax on its operations as such, is an interference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of the right of the state to revenue from the instrumentalities of commerce and the obligation

of the state to leave the regulation of interstate and foreign commerce to the Congress." Also, *Sundstrand Corp. v. Department of Revenue* (2d Dist. 1975), 34 Ill. App. 3d 694, 339 N.E.2d 351.

In cases such as this, when property is intended for interstate movement, the crucial question is the exact point at which the goods enter the stream of interstate commerce. The general rule originated in the days when lumber companies floated logs from northern forests downriver to sawmills located in other States. In *Coe v. Errol* (1886), 116 U.S. 517, 528, 29 L. Ed. 715, 719, 6 S. Ct. 475, the Supreme Court ruled that the movement of goods in interstate commerce does not begin until the goods have been shipped or otherwise begun to move from one state to another. The court said:

> "The carrying of them in carts or other vehicles or even floating them to the depot where the journey is to commence is no part of that journey. That is all preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation. Until actually launched on its way to another State, or committed to a common carrier for transportation to such State, its destination is not fixed and certain."

Thus property is not exempt from local taxation because there is an intent to export, or an integrated series of events which will end with exportation. *Joy Oil Co. v. State Tax Com.* (1949), 337 U.S. 286, 93 L. Ed. 1366, 69 S. Ct. 1075.

In *United Air Lines, Inc. v. Mahin* (1971), 49 Ill. 2d 45, 273 N.E.2d 585, the court held that storage of airplane fuel in Illinois and the withdrawal from storage for loading on planes prior to interstate flights were taxable uses of the fuel within the Illinois statute. *Cf. Sundstrand Corp. v. Department of Revenue* (2d Dist. 1975), 34 Ill. App. 3d 694, 339 N.E.2d 351.

■■ In the case at bar, the printer, Hines, delivered the brochures to Desaulniers where they were prepared for mailing. Deere furnished mailing lists to Desaulniers and directed Desaulniers to address, collate and mail the advertising material. Thus Deere exercised a power incidental to its ownership through its agent Desaulniers. Until the brochures were prepared for mailing, the destination of each brochure had not been determined, and any one could have been destined for an Illinois recipient. We believe Desaulniers functioned as a processor, not as a common carrier, and that the printed materials did not begin their journey in the stream of interstate commerce until they were delivered to the post office. (*Joy Oil Co. v. State Tax Com.* (1949), 337 U.S. 286, 93 L.

Ed. 1366, 69 S. Ct. 1075; *Service Merchandise Co. v. Tidwell* (Tenn. 1975), 529 S.W.2d 215; Annot., 11 A.L.R.2d 938, §5 (1950).) If the printed matter had been delivered by Hine to Deere, and Deere had prepared the material for mailing and taken it to the post office, the use tax would clearly apply. We do not believe Deere can escape the tax by employing a third party to assemble and mail the brochures for its benefit. In fact, the statutory definition of "use" refers to the exercise of the rights of ownership "by any person" and not exclusively by the owner. Accordingly, we conclude that the brochures were taxable by the State of Illinois.

Plaintiffs argue that the *only* taxable use of the advertising material occurs when it reaches its destination outside of Illinois and is utilized to promote the sale of Deere products, as was the case in *Miller Brewing Co. v. Korshak* (1966), 35 Ill. 2d 86, 219 N.E.2d 494. In *Miller* a use tax was imposed on certain advertising items such as neon signs, clocks and other paraphernalia which were fabricated in Minnesota and Wisconsin and then shipped by the manufacturer to Illinois to wholesalers for distribution to Illinois retailers. The supreme court held that these items were used by Miller, a Wisconsin corporation to stimulate sales in Illinois and that Miller was liable for the Illinois use tax. However, the *Miller* decision cannot be read to hold that the *only* taxable use of advertising material occurs when it reaches the potential customer.

In *Time, Inc. v. Department of Revenue* (1st Dist. 1973), 11 Ill. App. 3d 282, 295 N.E.2d 529, the State of Illinois sought to impose use taxes on unprinted paper manufactured out of State and shipped to Time in Chicago where it was cut and printed to make complete letters, envelopes and subscription order forms which were then addressed and mailed to persons outside of Illinois. The court found that *Time* made two uses of the paper, first, by printing and preparing the letters and forms, and, second when the letters were mailed from Illinois and then returned and processed into subscriptions. We think the facts of the case at bar more closely resemble *Time* than *Miller,* and that preparation for mailing, performed for and on behalf of Deere by Desaulniers, amounted to a taxable event in Illinois.

The *Miller* decision is significant here, however, for the proposition that physical custody of the property by the owner is not essential to a taxable use since the Miller Brewing Company never had actual possession of its advertising items. Similarly Deere can be said to have had constructive possession of its brochures through its agent Desaulniers, and Deere used the brochures in Illinois when it directed its agent to prepare them for mailing. It is of no concern where the material was shipped thereafter, whether interstate or intrastate. Tax liability had already attached.

Plaintiffs point to Service Occupation Tax Regulation, article 5(2), which provides that the tax does not apply "to property which the serviceman resells as an incident to a sale of service under an agreement by which the serviceman * * * by mail, delivers the property from a point in this State to a point outside this State, not to be returned to a point within this State * * *." Plaintiffs argue that, under this regulation, no tax would attach if Hines had mailed the brochures directly to the out-of-State recipients. We do not agree with plaintiffs' interpretation of the regulation. First, the regulation is limited to "resale" transactions. Deere's distribution of its brochures is more in the nature of a gift than a sale. Second, some of the brochures included coupons to be returned to Deere to order additional promotional literature, and in fact 1000 coupons were returned. Therefore, at least some of the material in question was to be returned to a point in this State so as to exclude it from the regulation.

Plaintiffs rely upon a recent Tennessee case, *Service Merchandise Co. v. Tidwell* (Tenn. 1975), 529 S.W.2d 215, where catalogs for a Tennessee mail-order company were printed, addressed and packaged in Minnesota, shipped by common carrier to a post office in Tennessee, from which they were mailed out of State to customers of the company. Tennessee sought to impose a use tax on the catalogs, contending that the mail-order company had a right to reclaim or otherwise change the destination of the catalogs while they were on the post office loading dock, but the court ruled that the catalogs were not taxable and emphasized the fact that the company did not have physical possession of the catalogs and exercised no control over them.

We believe the *Service* case meets the test we have applied and compels the opposite result in the case at bar. In *Service*, the preaddressed catalogs began to move in interstate commerce when they were placed in the hands of a common carrier in Minnesota. The interstate journey continued without interruption when the catalogs were deposited by the carrier at the post office in Tennessee for mailing to customers outside of Tennessee. In the instant case, on the other hand, the printed materials were delivered to Desaulniers in Illinois to prepare for mailing, and did not begin their interstate journey until they were deposited in an Illinois post office by Desaulniers. Although plaintiffs seek to equate the mailing services performed by Desaulniers with the function of a common carrier, the record does not support such a characterization.

Plaintiffs also argue that the imposition of an Illinois use tax will likely result in an impermissible double taxation of the printed material. We agree with the court in *Sundstrand Corp. v. Department of Revenue* (2d Dist. 1975), 34 Ill. App. 3d 694, 704, 339 N.E.2d 351, 358, which said "[I]t

will be time enough to resolve that question when in fact the taxpayer is faced with double or multiple taxation." Accord, *Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 83 L. Ed. 586, 59 S. Ct. 389.

For the reasons given we affirm the judgment of the Circuit Court of Peoria County.

Affirmed.

BARRY and SCOTT, JJ., concur.